**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                                                   REPORT AND
                                                   RECOMMENDATION
                                                   04-CR-6037-L

      v.

JOSEPH D. GREEN, JR.,

           Defendant.

_____

### Preliminary Statement

Currently before the Court is a motion by defendant Joseph Green to suppress evidence and statements. (Docket #13). The Government has filed papers in opposition to the motion. (Docket #16). A suppression hearing was held on October 29, 2004, after which the parties filed supplemental memoranda of law. (Docket #31, 32, 33). By Order of Judge David G. Larimer, dated March 24, 2005, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §636(b)(1)(A)-(B). (Docket #37). The following is my Report and Recommendation as to the defendant's suppression motion.

### Factual Background

The testimony adduced at the suppression hearing revealed that at approximately 11:00 a.m. on May 7, 2003, Rochester Police Officer Myron Moses received a telephone call from an informant, Malcolm Bryant. Bryant told Officer Moses that he knew of a male in the

area of Lyell Avenue and Murray Street, who was in possession of a handgun. Moses Tr. 10:25 - 12:1; 12:14-15; 28:1-7; 34:14-17. (Docket #28). Bryant described the individual as a tall, thin, light-skinned African American, who was wearing blue jeans and a white t-shirt. Moses Tr. 12:7-11. Immediately after receiving this phone call, Officer Moses went to the location with ATF agents, but did not see anyone matching that description. Moses Tr. 12:18 - 13:16.

At approximately 11:30 a.m., Officer Moses spoke with Bryant again, and learned that Bryant was planning to meet the suspect at the corner of Masseth and Immel Streets, located approximately four blocks away. Moses Tr. 13:18-25; 14:10-13; 30:13-17. The officers went to that location and, once there, Officer Moses observed the defendant, who fit the description given by Bryant, pacing "back and forth" between the corner and an abandoned house. Moses Tr. 14:19; 15:14-18. Officer Moses called Bryant again and told him that they were at the location and that he should initiate the meeting. Moses Tr. 16:5-9. Officer Moses testified that he expected to see Bryant walking to that corner, but a few moments later, Officer Moses observed Bryant driving down Masseth Street in a green Saturn, which he recognized as Bryant's car. Moses Tr. 15:7-11; 16:13-25. Based on their prior dealings, Officer Moses knew that Bryant's driver's license was suspended at that time. Moses Tr. 18:23-25. Then Officer Moses observed defendant run towards the passenger side of

Bryant's vehicle and get inside. Moses Tr. 16:15-17; 17:9-12. Before the car began to move, the officers surrounded Bryant's car with their guns drawn. Moses Tr. 17:9-12; 19:6-7; Urtis Tr. 71:24 - 72:1. The officers removed Bryant and defendant from the vehicle and handcuffed them. Moses Tr. 19:23-20; 20:10; 23:17; 44:1-3. Officer Moses testified that they stopped the car at 11:52 a.m., less than one hour after Officer Moses had first spoken with Bryant that day. Moses Tr. 18:1-3; 34:22-24.

Immediately thereafter, Investigator Robert Urtis, who had participated in the stop, observed a .25 caliber handgun on the front passenger seat in plain view. Moses Tr. 23:15-18; Urtis Tr. 49:18-21; 52:8-10; 79:21-25. In a search incident to defendant's arrest, the officers found crack-cocaine in defendant's pants pocket. Moses Tr. 25:4-7; 53:2-19; Urtis Tr. 80:6-12. Defendant was taken in a police vehicle to the Public Safety Building where Investigator Urtis issued <u>Miranda</u> warnings shortly after 1:00 p.m. Moses Tr. 26:3-5; Urtis Tr. 54:7-13; 55:7-12; 57:12-22. Defendant waived his <u>Miranda</u> rights and gave a statement admitting his possession of the gun and drugs. Urtis Tr. 61:11 - 63:4; <u>see</u> Exhibit #1. Investigator Urtis wrote the statement and after reviewing and editing it, defendant signed it. Urtis Tr. 63:5-10; 64:19 - 65:17; <u>see</u> Exhibit #2.

## Discussion

1. <u>Defendant's Motion to Suppress Evidence:</u> Throughout the

3

suppression proceedings, the government has steadfastly contended that the encounter between the defendant and the police on May 7, 2003 was nothing more than a <u>Terry</u> stop requiring only reasonable suspicion as opposed to an arrest requiring probable cause. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). The defendant, however, argues that: (1) the tip from the known informant (Malcolm Bryant) of a man in possession of a firearm was insufficient for a <u>Terry</u> stop under the reasoning of <u>Florida v. J.L.</u>, 529 U.S. 266 (2000), and (2) the circumstances surrounding the stop of the vehicle were far more intrusive than the police conduct permitted under <u>Terry</u> and could only be constitutionally justified under the more exacting "probable cause" standard applicable to arrests.

Obviously, if the totality of circumstances indicate that the nature of an encounter was too intrusive to be deemed a <u>Terry</u> stop and instead was akin to a full blown arrest, the government must establish that the police-citizen contact was supported by probable cause. Determining precisely where a <u>Terry</u> stop ends and a *de facto* arrest begins is not a legal analysis amenable to a bright line test. Indeed, the analysis often depends on parsing out the type of information the police had and their conduct in acting upon that information. <u>Compare</u>, e.g., <u>United States v. Marin</u>, 669 F.2d 73, 81 (2d Cir. 1982)(surrounding of a car, drawing of weapons and physical removal of occupants constituted a *de facto* arrest) <u>with</u> <u>United States v. Alexander</u>, 907 F.2d 269, 273 (2d Cir. 1990)(drawing of

4

guns by police in making Terry stop reasonable where target is suspected of being armed), cert. denied, 498 U.S. 1095 (1991). And even assuming that the conduct of the police was not a *de facto* arrest under the facts presented here, whether the report by a known informant of a man with a handgun by itself is sufficient to conduct a Terry stop is also not without doubt. Compare United States v. Bold, 19 F.3d 99, 104 (2d Cir. 1994)(report of gun possession by anonymous tipster justified stop in light of the statistical likelihood that the gun was illegal), cert. denied, 517 U.S. 1250 (1996) with United States v. Roch, 5 F.3d 894, 899 (5th Cir. 1993)(mere possession of gun inadequate to suggest criminal activity without corroboration that suspect was a convicted felon). See also United States v. Collins, 2003 WL 21212743, *3 (D. Mass. May 23, 2003)(collecting cases and holding that Terry stop unlawful when based solely on information suspect possessed a gun on his person).

Here, however, it is not necessary to run the suppression hearing facts through the foregoing analytical framework because there exists an independent basis for the stop: the conduct of the informant, Malcolm Bryant. Although Bryant was working with the police as an informant, his decision to operate a vehicle without a valid driver's license was his alone and was not directed by Officer Moses. Moses' observation of Bryant driving, coupled with his knowledge that Bryant did not have a current driver's license, provided a valid basis for the stop. That the stop was a pretext

for investigating the defendant for illegal possession of a weapon is of no moment, for once Moses observed Bryant driving, and regardless of his suspicions about defendant, Officer Moses had probable cause to believe Bryant was committing an offense in violation of New York's Vehicle and Traffic Law. At that point, Moses had the legal authority to stop the car and prevent Bryant from operating the vehicle. Wren v. United States, 517 U.S. 806, 810 (1996)("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). As the Second Circuit has explained:

> [A] police officer who observes a traffic violation may stop a car without regard to what a 'reasonable officer' would do under the circumstances and without regard to the officer's own subjective intent. (citation omitted). In other words, an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance.

United States v. Dhinsa, 171 F.3d 721, 724-25 (2d Cir. 1998).

Once the car was legally stopped, the officers were well within their rights to remove the defendant from the car. See Maryland v. Wilson, 519 U.S. 408, 415 (1997) (an officer making a traffic stop may order passengers out of car); Mollica v. Volker, 229 F.3d 366, 369 (2d Cir. 2000) ("if a stop is lawful, passengers and drivers have no Fourth Amendment interest in not being ordered out of the stopped vehicle"). Moreover, given the informant's tip that Green

6

was in possession of a handgun, that the defendant was immediately secured and handcuffed by the officers after being ordered to exit the vehicle did not violate his Fourth Amendment rights. "A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists." United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990), cert. denied, 498 U.S. 1095 (1991). See e.g., Cardona v. Connolly, 361 F.Supp.2d 25, 31 (D. Conn. 2005)(given the circumstances presented to the officer, handcuffing of passenger after making valid traffic stop not unreasonable); see also Maryland v. Wilson, supra, at 414 (noting generally that "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car").

Within seconds after the defendant was removed from the passenger side of the car, Investigator Urtis noticed a firearm in a holster in plain view on the front passenger seat of the vehicle and said "I see a gun," whereupon the defendant was immediately searched. Found on his person was a quantity of crack cocaine. Having spotted the weapon where the defendant was seated moments before, the pat down search was proper. See Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977)(police justified in conducting limited "pat down" search for weapons where officer reasonably believed

person stopped might be armed and dangerous). Defense counsel agreed at the hearing that if the stop and subsequent seizure of the defendant were deemed legal, the defendant would not contest the legality of the subsequent "pat-down" search of defendant which revealed the drugs in his possession. T. 81:8-25. See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)(recognizing "plain feel" as a reasonable corollary to the plain view doctrine); United States v. Salazar, 945 F.2d 47, 51 (2d Cir. 1991)(if, during a permissible pat-down for weapons, the police officer feels "something that their experience tells them is narcotics, the pat-down gives them probable cause to search the suspect for drugs"), cert. denied, 504 U.S. 923 (1992).

For these reasons, it is my Report and Recommendation that the defendant's motion to suppress evidence found in the vehicle and on defendant's person should be **denied**.

2. Defendant's Motion to Suppress Statements: Defendant also moves to suppress his post-arrest statements. However, based on the undisputed testimony that defendant was advised of his Miranda rights before giving his statement, the only basis for possibly suppressing the statement would be if it were tainted by an unlawful arrest. Given that I have found the arrest of the defendant to be lawful, it is my Report and Recommendation that defendant's motion to suppress his statements should be **denied**.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: June 21, 2005
       Rochester, New York

9

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b) and Local Rule 72.3(a)(3).[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See e.g. *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
   **SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: June 21, 2005
       Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. §3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).