UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                                            DECISION AND ORDER

                                                                            04-CR-6037L

                    v.

JOSEPH D. GREEN, JR.,

                                Defendant.
_____

      Defendant, Joseph D. Green, Jr. ("Green"), is charged in this case with certain offenses relating to his alleged unlawful possession of a firearm and cocaine base on May 7, 2003. This Court referred all pretrial motions in this case to United States Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. § 636(b).

      Green has moved to suppress physical evidence, a firearm and a quantity of crack cocaine, as well as statements made to law enforcement officers on May 7, 2003, when Green and another, Malcomb Bryant ("Bryant"), were stopped while driving Bryant's vehicle by officers of the Rochester Police Department. Magistrate Judge Feldman conducted a suppression hearing, and, after receiving memoranda on the issues presented, issued a Report and Recommendation on June 21, 2005 recommending that the motion to suppress be denied in all respects. Defendant timely filed objections to the Magistrate Judge's Report and

Recommendation, and the Government filed a memorandum in support of the Magistrate Judge's determinations.

The facts in this case are straightforward and not disputed in any material way. I reviewed the transcript ("Tr.") of the suppression hearing held on October 29, 2004, and I believe that Magistrate Judge Feldman has summarized the pertinent facts clearly and accurately. Familiarity with his Report and Recommendation is assumed.

In arguing the suppression motion, the parties focused chiefly on whether the stopping of Bryant's vehicle on May 7, 2003, constituted an arrest or a *Terry*[1] stop. Rochester Police Department Officers Robert Urtis and Myron Moses testified that they had received information from an informant whom they knew, Bryant, that a thin, tall, light-skinned black man, wearing blue jeans and a t-shirt, was carrying a firearm. Shortly after receiving that information, the officers observed a person fitting that description, who later turned out to be defendant Green. The officers then directed Bryant to make contact with Green where he was then located, at the corner of Masseth and Immel Streets in Rochester, New York.

Shortly thereafter, Bryant arrived in an automobile, which was unexpected, since Officer Moses knew that Bryant's license had been suspended. When Bryant arrived at the designated intersection, Green jumped into the passenger side of the vehicle. Before the vehicle could proceed, officers surrounded it and ordered both Bryant and Green out of the vehicle.

Officer Moses testified that he knew Bryant, and also knew that his driver's license had been suspended. Magistrate Judge Feldman credited that testimony and determined that the

---

[1]*Terry v. Ohio*, 392 U.S. 1 (1968).

officers had an objective basis to believe that Bryant was committing a traffic violation, that is, driving with a suspended license, regardless of the officers' subjective motivation. I agree with Magistrate Judge Feldman's analysis of the pertinent facts and the controlling legal authority concerning such traffic stops. Based on what the officers knew, it was objectively reasonable to believe that a violation of the New York Vehicle and Traffic Law had occurred. I would affirm Magistrate Judge Feldman's Report and Recommendation to deny the motion to suppress on this basis alone. Once the stop of the vehicle had been effected, the officers were justified in removing the occupants. A weapon was almost immediately observed, in plain view, where Green had been sitting in the vehicle. Armed with this information, the subsequent pat-down and search of Green were also reasonable.

I also believe that the facts here support the Magistrate Judge's finding that this was a *Terry* stop rather than an arrest. Although no bright-line test exists for distinguishing between the two, *see Weaver v. Shadoan*, 340 F.3d 398, 408 (6th Cir. 2003); *Smith v. Ball State Univ.*, 295 F.3d 763, 768 (7th Cir. 2002), the Second Circuit has set forth several factors to be considered, *see Oliveira v. Mayer*, 23 F.3d 642, 645 (2d Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995); *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993). These include:

> the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, ... and in particular such factors as the number of agents involved ...; whether the target of the stop was suspected of being armed ...; the duration of the stop ...; and the physical treatment of the suspect ..., including whether or not handcuffs were used.

*Perea*, 986 F.2d at 645 (citations omitted). No one of these factors is dispositive, and "[i]ndeed, courts have occasionally concluded that a particular detention was a permissible *Terry* stop even

though it involved a few of the[se] intrusive elements ... ." *Oliveira*, 23 F.3d at 646 (collecting cases).

In the case at bar, the officers were certainly justified in stopping Bryant's vehicle (or more accurately, in preventing Bryant from driving away from the scene), based on their knowledge that his driver's license had been suspended. Having done so, they were also justified in ordering the occupants out of the vehicle. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"); *Mollica v. Walker*, 229 F.3d 366, 369 (2d Cir. 2000) ("if a stop is lawful, passengers and drivers have no Fourth Amendment interest in not being ordered out of the stopped vehicle").

Defendant makes much of the facts that there were several officers and police vehicles present, that the officers had their guns drawn, and that Green was immediately restrained upon exiting the vehicle. As the Second Circuit has explained, however, "[w]hether a seizure is an arrest or merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances." *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991). Here, those circumstances included the facts that: the officers had been given a detailed description, by a known informant, of a man carrying a firearm; Green matched the informant's description of the gun-wielding man; and the informant confirmed his initial description by driving to the scene, where the suspect entered the vehicle. Under those circumstances, it was more than reasonable for the officers to order the occupants out of the car and to restrain them, particularly Green, for their own safety and that of any others in the area. *See Oliveira*, 23 F.3d

at 646 (citing cases in which both the Second Circuit and other circuits have found an intrusive detention to be only a *Terry* stop where "the police ... had a reasonable basis to believe the suspect was armed or otherwise dangerous"); *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993) (holding that "the officers were also justified in ordering Mr. Perdue out of the car and onto the ground as a means of neutralizing the potential danger," and noting that "[t]his holding is consistent with the recent trend allowing police to use handcuffs or place suspects on the ground during a *Terry* stop") (citing *United States v. Esieke*, 940 F.2d 29, 36 (2d Cir.) (handcuffs and leg irons), *cert. denied*, 502 U.S. 992 (1991), and cases from eight other circuits).

Had Green not jumped into the car, the officers would have been justified in approaching Green, patting him down, and questioning him based on their information that he was carrying a firearm. In my view, the fact that Green jumped into the vehicle did not alter the officer's right to take the action they did. *See United States. v. Martins*, 413 F.3d 139, 149 (1st Cir. 2005) (police officer may pat down an individual for concealed weapons upon a reasonable suspicion that the individual might be armed, provided that the officer's belief is grounded in specific and articulable facts) (citing *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). Of course, once the officers spied the firearm in plain view in the vehicle (which occurred within moments after Green was taken out and handcuffed, *see* Tr. (Dkt. #28) at 51), the circumstances changed, justifying further action by the police, including the arrest of Green.

Defendant also emphasizes that at the suppression hearing, Officer Urtis referred to Green being "arrested from the vehicle ... ." Tr. at 51. An officer's subjective belief about whether a person is being arrested or merely "stopped," however, is irrelevant, for the test is an objective

one.  *See United States v. Jackson*, 377 F.3d 715, 717 (7th Cir.) ("It does not matter for current purposes what label the officer applied at the scene; analysis under the fourth amendment is objective"), *cert. denied*, 125 S.Ct. 649 (2004); *United States v. Maguire*, 359 F.3d 71, 77 (1st Cir. 2004) (test to determine whether an otherwise valid *Terry* stop escalated into a *de facto* arrest is "objective only").  If Officer Urtis had testified that he believed that Green's initial detention was nothing more than a *Terry* stop, presumably defendant would be urging the Court to give that characterization no weight whatsoever.  I find, therefore, that the stop of the vehicle was justified and find no basis to suppress either the firearm or the drugs.

Green also gave oral and written statements to the police at the Public Safety Building.  Magistrate Judge Feldman found that the officers had properly advised Green of his *Miranda* rights.  There was no testimony by Green or any other witness to contradict that factual determination.  I agree with Magistrate Judge Feldman that there is no basis to suppress the inculpatory statements made by Green after his arrest.

## CONCLUSION

I adopt the Report and Recommendation of United States Magistrate Judge Jonathan W. Feldman, filed June 21, 2005.  I deny defendant's motion to suppress physical evidence and to suppress statements, in all respects.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 12, 2005